```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   --------------------------------x
                                        03-CR-795(RJD)
 3   UNITED STATES OF AMERICA,          19-CR-221(RJD)
                                        United States Courthouse
 4           Plaintiff,                 Brooklyn, New York

 5           -against-                  July 30, 2021
                                        10:00 a.m.
 6   JOHN MARTIN,

 7           Defendant.
     --------------------------------x
 8
        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING and VIOLATION OF
 9                       SUPERVISED RELEASE
             BEFORE THE HONORABLE RAYMOND J. DEARIE
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:       UNITED STATES ATTORNEY'S OFFICE
                               Eastern District of New York
13                             271 Cadman Plaza East
                               Brooklyn, New York 11201
14                             BY:  MICHAEL GIBALDI, AUSA
                                    JONATHAN SEIGEL, AUSA
15

16   For the Defendant:        LAW OFFICES OF RICHARD W. LEVITT
                               148 East 78th Street
17                             New York, New York 10021

18

19

20   Court Reporter:           Georgette K. Betts, RPR, FCRR, CCR
                               Phone:  (718)804-2777
21                             Fax:    (718)804-2795
                               Email:  Georgetteb25@gmail.com
22

23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

PROCEEDINGS

1          THE COURTROOM DEPUTY:  We are on this morning for a

2     guilty plea.  This is U.S.A. versus John Martin, docket number

3     19-CR-221.  We're on superseder 3 and Mr. Martin is defendant

4     number three.

5          We are also on for a violation of supervised release

6     under docket number 03-CR-795 and Mr. Martin is defendant

7     number two.

8          Can I ask the attorneys, please, to note their

9     appearance beginning with counsel for government.

10          MR. GIBALDI:  Good morning, your Honor.  For the

11     United States, this is Michael Gibaldi.  With me at counsel

12     table from U.S. Probation are officers Ewelina Zajkowski and

13     Erin Weinrauch and also on the telephone is my colleague

14     Jonathan Seigel.

15          THE COURT:  Good morning, everyone.

16          PROBATION OFFICER ZAJKOWSKI:  Good morning, your

17     Honor.

18          PROBATION OFFICER WEINRAUCH:  Good morning, your

19     Honor.

20          MR. LEVITT:  For Mr. Martin, Richard Levitt.  Good

21     morning, your Honor.  Mr. Martin is seated to my right.

22          THE COURT:  Mr. Levitt, good morning.  Mr. Martin,

23     good morning.

24          THE DEFENDANT:  Good morning.

25          THE COURT:  Are we ready to proceed, Mr. Levitt?

PROCEEDINGS

1          MR. LEVITT:  Yes, your Honor.

2          THE COURT:  So, Mr. Martin, are you ready to

3  proceed?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Have you had enough time, it's a silly

6  question under the circumstances I grant you, but have you had

7  enough time to consider your decision to offer these pleas of

8  guilty?

9          THE DEFENDANT:  Yes.

10         THE COURT:  And to confer with Mr. Levitt?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Are you satisfied with his

13  representation?

14         THE DEFENDANT:  Yes, absolutely.

15         THE COURT:  Swear the defendant please.

16         THE COURTROOM DEPUTY:  Mr. Martin, I'm going to ask

17  you to remain seated and raise your right hand.

18         (The defendant was sworn/affirmed.)

19         THE DEFENDANT:  Yes.

20         THE COURTROOM DEPUTY:  Thank you.

21         THE COURT:  All right, sir.  As I'm sure Mr. Levitt

22  has told you, I have to ask you a number of questions.  If

23  there's anything I say that isn't entirely clear to you, don't

24  hesitate to say so.  I will do my best to clarify any

25  statement.

PROCEEDINGS

1           If you wish at any time during the proceeding to

2   speak with Mr. Levitt, just make that request and I will see

3   to it that you have as much time as you need to speak

4   privately with Mr. Levitt.

5           Do you understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Finally, you should understand that

8   you're now under oath, that means your answers to my questions

9   must be truthful.  If they were not in any material way, you

10  could subject yourself to further criminal charges for the

11  offense of perjury, which is lying while under oath.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Let's begin by asking you to state your

15  full name.

16          THE DEFENDANT:  John Martin.

17          THE COURT:  How old are you, Mr. Martin?

18          THE DEFENDANT:  Forty-nine.

19          THE COURT:  What schooling or formal education have

20  you had?

21          THE DEFENDANT:  I went back to school in 2018 and

22  got my high school diploma.

23          THE COURT:  Okay.  English is your first language I

24  assume.

25          THE DEFENDANT:  Yes.

5

PROCEEDINGS

1          THE COURT:  Are you currently or have you recently

2     been under the care of any physician, psychiatrist, any

3     medical professional?

4          THE DEFENDANT:  Just for COVID.

5          THE COURT:  You've been treated?

6          THE DEFENDANT:  Yes.

7          THE COURT:  W are you feeling?

8          THE DEFENDANT:   Feeling a little better.

9          THE COURT:  I'm sorry?

10          THE DEFENDANT:  Feeling a little better.

11          THE COURT:  Are you able to concentrate on what I

12     say to you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Have you had any medication in the past

15     24 hours?

16          THE DEFENDANT:  Just breathing machine.

17          THE COURT:  Have you ever had a problem with drugs

18     or alcohol?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Could you explain briefly.

21          THE DEFENDANT:  I had used cocaine when I was home.

22          THE COURT:  Okay.

23          THE DEFENDANT:  And alcohol.

24          THE COURT:  I'm sorry?

25          THE DEFENDANT:  And alcohol.

PROCEEDINGS

1          THE COURT:  Does your prior use of cocaine in any

2     way affect your ability to recall the events in question here?

3          THE DEFENDANT:  No, it won't affect me.

4          THE COURT:  I'm sorry?

5          THE DEFENDANT:  No, it won't affect me.

6          THE COURT:  Mr. Levitt, in your discussions with

7     Mr. Martin, have you ever had difficulty communicating with

8     him?

9          MR. LEVITT:  No, your Honor.

10          THE COURT:  Are you confident that he understands

11     the rights he'd be waiving by pleading guilty?

12          MR. LEVITT:  I am.

13          THE COURT:  Is he, in your judgment, competent to

14     proceed?

15          MR. LEVITT:  I believe he is, your Honor.

16          THE COURT:  Once again, Mr. Martin, you're satisfied

17     with counsel's representation?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Now, Mr. Martin, the next series of

20     questions is really designed to establish as a matter of

21     record that you understand everything that you give up by

22     pleading guilty.

23          You have an absolute right to continue in your plea

24     of not guilty.

25          Do you understand that?

PROCEEDINGS

1          THE DEFENDANT:  Yes.

2          THE COURT:  And if you persist in your plea of not

3    guilty you'd be entitled to a speedy and a public trial by

4    jury with the assistance of counsel on the charges in the

5    superseding indictment.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  At trial you'd be presumed innocent of

9    all the charges.  The government would have to attempt to

10   overcome this presumption of innocence and prove you guilty by

11   competent evidence and beyond a reasonable doubt.  You, sir,

12   would not be required to do a thing.  You could sit back and

13   do nothing, say nothing.  Simply put the government to the

14   burden of trying to convince the jury of your guilt.

15         Do you understand?

16         THE DEFENDANT:  Yes.

17         THE COURT:  That means, as a practical matter, sir,

18   that if the government were to fail in any way, technical or

19   otherwise, the jury would be required under my instructions to

20   find you not guilty even if you committed these offenses.

21         Do you follow?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Now in the course of a trial the

24   government would be obligated of course to bring its witnesses

25   here to the courtroom, each would be required to testify under

PROCEEDINGS

1    oath, in your presence, the presence of counsel.  You would

2    have the right therefore to confront each of these witnesses

3    face to face here in the courtroom.

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  You'd have the right to, through

7    counsel, to cross examine each of the government's witnesses

8    and you'd have the right, when appropriate, to object to

9    evidence offered by the government.  You'd have the right to

10   offer evidence in your own defense and in that regard you

11   could compel the attendance of witnesses and the production of

12   evidence through the use of a court order or subpoena.

13           Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  At trial, you would have the right to

16   testify in your own defense, but you'd be under no obligation

17   to do so.  As I said before, the government is -- the burden

18   is on the government to prove your guilt, you have no burden

19   whatsoever.

20           Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  If you chose to avail yourself of that

23   right and not testify and if counsel requested of me, as he

24   likely would, I would instruct the jury in the strongest

25   possible terms that they could not in any way hold your

PROCEEDINGS

1    decision against you.

2                Do you understand that, Mr. Martin?

3                THE DEFENDANT:  Yes.

4                THE COURT:  And finally, the decision to testify or

5    not is yours to make.  Not counsel's, right.  It's yours to

6    make.  Obviously, you make that decision in consultation with

7    your attorney, but ultimately it is your decision to make.

8                Do you understand that?

9                THE DEFENDANT:  Yes.

10               THE COURT:  And, finally, no one else can make you

11   testify, not your lawyer, not the government's lawyer, not the

12   Court.  The decision is entirely your own.

13               Do you understand that?

14               THE DEFENDANT:  Yes.

15               THE COURT:  All right.  So if you plead guilty,

16   Mr. Martin, you give up all these rights for all time.

17               Do you understand?

18               THE DEFENDANT:  Yes.

19               THE COURT:  There will be no trial, with the

20   possible exception of sentence which I'll explain in a few

21   minutes, there is no right to an appeal.  I will simply enter

22   a judgment of guilty based upon your plea of guilty.

23               Do you understand that?

24               THE DEFENDANT:  Yes.

25               THE COURT:  And, finally, before I can accept your

PROCEEDINGS

1  pleas I'm required, by rule, to satisfy myself that you are in

2  fact guilty of the charges in counts -- I believe we're

3  talking about Counts Two and three?

4        MR. LEVITT:  One, Two and Three, your Honor.

5        THE COURT:  One, Two, Three?

6        MR. LEVITT:  Yes.

7        THE COURT:  To do that I'm going ask you a few

8  questions in just a moment or two.  In responding to my

9  questions, obviously you give up your right to remain silent.

10  You'll give up your constitutional right not to incriminate

11  yourself and you'll be called upon here in open court to

12  acknowledge your guilt.

13        Do you understand?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Are you willing then to give up your

16  right to a trial and these other rights I have just explained?

17        THE DEFENDANT:  Yes.

18        THE COURT:  I understand there is no agreement

19  between the parties, but I do have a penalty sheet, we'll get

20  to that in just a few minutes.

21        All right.  The charges One, Two and Three.  Okay,

22  the charges read as follows:

23        Count One, in or about and between March 2019 and

24  May 2019, within the Eastern District of New York and

25  elsewhere, the defendant, John Martin, also known as Lil John

PROCEEDINGS

1    and LJ and other defendants named, together with others, did

2    knowingly and intentionally conspire to obstruct, delay and

3    affect commerce in the movement of articles and commodities in

4    commerce by robbery, to wit:  The robbery of commercial

5    proceeds and narcotics trafficking proceeds from individuals

6    in Queens County, New York; Richmond County, New York; Suffolk

7    County, New York; and New Jersey, end quote.

8            Count Two reads:

9            On or about May 4, 2019, within the Eastern District

10   of New York, the defendants, John Martin and other defendants

11   named, together with others, did knowingly and intentionally

12   commit and threaten physical violence to one or more persons

13   whose identities are known to the grand jury, inside a

14   residence in Queens, New York in furtherance of a plan and

15   purpose to obstruct, delay and affect commerce and the

16   movement of articles and commodities in commerce by robbery,

17   to wit:  A plan and purpose to obtain commercial proceeds and

18   narcotics trafficking proceeds from persons inside the

19   residence by reference.

20           And, finally, Count Three reads:

21           On or about May 4, 2019 within the Eastern District

22   of New York, the defendants, John Martin and other defendants

23   named, together with others, did knowingly and intentionally

24   use and carry one or more firearms during and in relation to a

25   crime of violence, to wit:  The crime charged in Count Two,

PROCEEDINGS

1   and did knowingly and intentionally possess such firearms in

2   furtherance of said crime of violence one or more which

3   firearms were brandished.

4           Have you reviewed these charges, Mr. Martin?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Are you competent that you understand

7   what you're charged with?

8           THE DEFENDANT:  Yes.

9           THE COURT:  In Count One, sir, you're charged with

10  the crime of conspiracy.  What is your understanding,

11  Mr. Martin, of the crime of conspiracy, what is a conspiracy?

12          THE DEFENDANT:  To conspire with one or more person.

13          THE COURT:  Okay.  Well, you defined it by using the

14  term, but I think you have the gist of it.  The crime charged

15  in Count One is an illegal agreement, okay.  It's the

16  agreement itself that is the focus of the crime, not anything

17  that comes after.  If you and I agree to sell cocaine on the

18  street and we mean it, we've committed the crime of conspiracy

19  to distribute cocaine regardless of whether we sell a gram.

20  You follow?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Just make sure we all understand this.

23  All right.

24          Now let me turn my attention to the all important

25  subject of sentencing.  This discussion, Mr. Martin, really

13

PROCEEDINGS

1  comes in three parts.  The first part has to do with the

2  statutory penalties for these offenses, that is, the penalties

3  that Congress has written into the statute.  Then I'll go on

4  to discuss briefly the sentencing guidelines and, finally,

5  explain to you what ultimately the law requires of me.  All

6  right.

7           For Counts One and Two -- bear with me just a

8  second.  For Counts One and Two there is a maximum term of 20

9  years imprisonment, there is no mandatory minimum.  You are

10 subject to a term of supervised release of three years.

11 Supervised release is a period of supervision that begins the

12 moment you walk out of federal prison, okay.  If you were to

13 violate the terms or conditions of your supervised release,

14 then under the terms of my sentence in this case you could be

15 returned to prison for up to two years without any credit

16 being given to you for the time you spent at liberty under

17 supervision.

18           Do you follow that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Okay.  The statute also provides for a

21 fine and in this instance it's the greater of $250,000 or

22 twice the gross gain.  Restitution is mandatory, as indicated,

23 in the full amount of each victims' losses.

24           I will impose not only for Count One but each of the

25 counts a special assessment of $100, as I'm required to do.

PROCEEDINGS

1  So the special assessments would total $300 and you will face

2  criminal forfeiture of the proceeds of any crime or any

3  property derived from those proceeds in a proceeding that will

4  be addressed at the time of sentence or shortly thereafter.

5        Now Count Three is different, Mr. Martin, as I'm

6  sure you know.  The maximum term here is life imprisonment,

7  this is by statute, the maximum term.  The minimum term is

8  seven years.  What I'm required to do is add that seven years

9  to any sentence I impose on Counts One and Two.  I don't have

10  any discretion.  I have to just pile it on.

11        Do you understand what I'm saying?

12        THE DEFENDANT:  Yes.

13        THE COURT:  And by the way, the sentences, something

14  of a technical point, the sentences for Counts One and Two

15  could run consecutively, all right.  I'm not saying they will,

16  but the law would permit me to impose consecutive sentences.

17  Then whatever sentence or sentences I impose on Counts One and

18  Two I would then be required to add a sentence of seven years.

19        Here the maximum term of supervised release is five

20  years and if you were to violate the supervised release in

21  this provision, you'd be subject to being returned for a full

22  five years without any credit being given to you for the time

23  you spent at liberty.

24        Again, the same fine, 250,000 or twice the gross

25  gain, and the special assessment as I have mentioned before.

15

PROCEEDINGS

1          We are, in fact, conducting two proceedings

2     simultaneously, I appreciate that.  There is outstanding a

3     violation of supervised release that focuses on these very

4     same charges, just so the record is clear.

5          With respect to the violation, the maximum term of

6     is five years, there is no mandatory minimum.  The maximum

7     supervised release term is life to follow any term of

8     imprisonment less any term of imprisonment that was imposed

9     upon revocation of supervised release.  That's a bit of a

10    mouthful but that's what it is.

11         Have you discussed these charges and the penalties

12    with counsel?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you have any questions you'd like to

15    put to me?  Take your time.  Just move away from the

16    microphone.

17         (Counsel and defendant confer.)

18         MR. LEVITT:  Thank you, your Honor.

19         THE COURT:  All right.  Counsel has answered your

20    questions to your satisfaction, Mr. Martin?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  Continuing along here.

23         One point I should make is that the sentence for the

24    violation of supervised release could run consecutively.  I

25    can virtually assure you it will not, okay?

PROCEEDINGS                                    16

1          THE DEFENDANT:  Yes.

2          THE COURT:  The next part is the guidelines.  Have

3  you seen this penalty sheet, Mr. Martin?

4          THE DEFENDANT:  Yes.

5          THE COURT:  You've had chance to review it with

6  counsel?

7          THE DEFENDANT:  Yes.

8          THE COURT:  The government has laid out their view,

9  their calculation, if you will, of what we call the guideline

10  sentencing, the advisory range under the sentencing guidelines

11  and this addresses the question of where within this rather

12  wide statutory range, in your case zero to life, you should be

13  sentenced, okay?  And the guidelines take into consideration a

14  lot of information that would be obvious, the crimes

15  themselves of course, your personal history, criminal history,

16  et cetera, et cetera.

17          This is the government's version here.  It's not my

18  version, okay, I just want you to understand that.  I may

19  ultimately agree with this, I may disagree with it in whole or

20  in part, okay, and indeed Mr. Levitt will have something to

21  say on the subject, but just so you know, today when you offer

22  these pleas of guilty, it is what the government is thinking

23  in terms the applicable guidelines range, okay.  It's laid out

24  on pages three, four to five of your agreement.

25          The government concludes that given your criminal

PROCEEDINGS

1   history of -- assuming a criminal history of III, an effective

2   guidelines range, meaning the guidelines range plus the seven

3   years I have to add -- let me just -- let me get this

4   straight -- is 256 to 298 months.  That's the government's

5   calculation.  It may be right, it may be wrong.  I can't tell

6   you today, sir, whether I agree with it or not.  I won't be in

7   a position to tell you until after I have received the

8   presentence report prepared by the Probation Department that

9   will tell the story of the case and your involvement in it.

10  It will have a personal history, it will explain any criminal

11  history.  You'll see that document, Mr. Martin, along with

12  counsel before I do as will the government.  Mr. Levitt will

13  be given an opportunity to voice objections, comment on the

14  report to the Probation Department, it will eventually come to

15  me.  To the extent that there are any material facts that are

16  in dispute, which could happen, we'll find a way to resolve

17  those factual disputes either informally, through

18  presentations by counsel, or if necessary we could have a

19  hearing and take live testimony to resolve any factual

20  disputes.

21          Once the facts are in place, it becomes my

22  obligation to apply the guidelines as I understand them, all

23  right, and establish for the Court's purpose a sentencing

24  range, an advisory sentencing range.  So as the term suggests,

25  Mr. Martin, I'm not bound by this guidelines calculation, but

PROCEEDINGS

1    I am bound to consider it as part of the sentencing judgment.

2    All right.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Now we get to stage three.  What the law

5    requires ultimately is that I consider the advisory -- that I

6    calculate and consider the advisory guideline range, other

7    factors that are laid out in the statute that are quite

8    predictable about the nature of the crime, the offender, et

9    cetera, and any other information that Mr. Levitt or the

10   government believes is pertinent to the sentencing judgment,

11   anything they bring to my attention.  I take all of that in

12   and what the law requires of me is a reasonable sentence.

13             If at the time you think I've imposed an

14   unreasonable sentence, you may appeal that sentence to a

15   higher court and the fees and expenses associated with that

16   application, including counsel fees, will be paid by the

17   Court.

18             Do you understand?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Counsel, have I left anything out?

21             MR. LEVITT:  No, your Honor.

22             MR. GIBALDI:  No, your Honor.

23             THE COURT:  Are you ready to plead, Mr. Martin?

24             THE DEFENDANT:  Yes.

25             THE COURT:  What is your plea then to Count One of

PROCEEDINGS

1    the superseding indictment, guilty or not guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  And Count Two, guilty or not guilty?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  And Count Three, guilty or not guilty?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  All right, you've assured me you

8    understand the nature of these charges.

9              Is there a written allocution?

10             MR. LEVITT:  Yes, your Honor, but may have I moment

11   before we go into it?

12             THE COURT:  Of course.

13             MR. LEVITT:  Thank you.

14             (Counsel and defendant confer.)

15             MR. GIBALDI:  Your Honor, if I may just ask, did

16   your Honor intend to handle the VOSR charges after the

17   allocution?

18             THE COURT:  Yes.

19             MR. LEVITT:  We're ready to proceed, your Honor.

20             THE COURT:  All right.  Mr. Martin, you've

21   acknowledged that you were involved in a conspiracy to commit

22   a robbery or robberies, that you were involved in a particular

23   robbery on the 4th of May 2019, and that during that robbery a

24   firearm was brandished.  Tell me what you did.

25             THE DEFENDANT:  As to Count One of the third

20

PROCEEDINGS

1   superseding indictment, between March 2019 and May 2019, I

2   agreed with one or more person to rob people of money inside a

3   residence in Queens, New York.  I've been told that the

4   government has evidence that the money targeting was in fact

5   commercial proceeds and/or narcotic trafficking proceeds and I

6   do not dispute this.

7           THE COURT:  You said you do not dispute this?

8           MR. LEVITT:  Yes, your Honor.

9           THE COURT:  Okay.  Fair enough.

10          THE DEFENDANT:  As to Count Two of the third

11  superseding indictment, on or about May 4th, 2019 I

12  participated in a robbery, charges in Count One knowing that

13  one or more persons would be threatened with violence if

14  necessary to commit the charge robbery and I understand that

15  the fact such threats were made.

16              As to Count Three of the third superseding

17  indictment, on or about May 4th during the robbery conspiracy

18  I admit to Count One, one or more firearms was brandished and

19  others involved in the robbery and this was reasonable

20  foreseeable.

21          THE COURT:  When you say reasonably foreseeable,

22  none of this came as a surprise to you.  You were going to rob

23  what you thought were proceeds of something, some funds, you

24  were going to do that with the use of a weapon, you and your

25  colleagues, I should say.

PROCEEDINGS

1          MR. LEVITT:  What was reasonably foreseeable, your

2    Honor, was the use of a weapon.

3          THE COURT:  Is that right?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Anything from the government?  Anything

6    else?  This happened in Queens, he's allocuted to that.

7    Anything else?

8          MR. GIBALDI:  Just a few facts to put on the record,

9    your Honor.  First of all, I just want to confirm that the

10   government would be prepared to prove with respect to Count

11   Three that the firearm was actually brandished by one of

12   Mr. Martin's co-conspirators.

13          I also would like to put on the record with respect

14   to Counts One and Two that at trial the government would be

15   prepared to prove that the purpose of the charged conspiracy

16   was to rob narcotics proceeds and narcotics and that the

17   purpose of the Queens robbery charged in Count Two was to rob

18   narcotics proceeds.

19          THE COURT:  All right.  Based on the information

20   given to me, I find that the defendant is acting voluntarily

21   and he fully understands his rights, the consequences and

22   possible consequences of his pleas, and that there are factual

23   bases for these pleas of guilty.  I, therefore, accept the

24   pleas of guilty to Counts One, Two and Three of the

25   superseding indictment 19-CR-221, S-3.

PROCEEDINGS

1          Mr. Martin, I urge you to cooperate with the

2    Probation Department, consistent of course with the advice of

3    counsel, in their preparation of the presentence report.  We

4    will have the clerk of the court announce the sentencing date.

5          THE COURTROOM DEPUTY:  December 17th at 12 o'clock.

6          THE COURT:  That's an interesting day, December 17.

7    Let's see, what year will it be.  December 17th, I don't know

8    if that's a good omen or bad, but December 17th is the day I

9    was sworn in as a lawyer so it sticks with me.  All right.

10          Now, pending as well, as you know, as we discussed

11   briefly, are violations of supervised release and these

12   violations one, two and three all relate to the events that

13   you've just acknowledged.  The violation itself is a violation

14   of a condition that you not commit another crime.  So with

15   respect to each of these crimes simultaneously you have

16   acknowledged a violation of supervised release.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  I've already related to you what the

20   possible sentencing would be as a result of these violations.

21   Anything else I need to add?

22          MR. LEVITT:  Not from our standpoint.

23          MR. GIBALDI:  No, your Honor.

24          THE COURT:  The defendant has, during this

25   proceeding, acknowledged the violations in the presence and

23

PROCEEDINGS

1    with the advice of counsel, and the acknowledgement is

2    accepted by the Court.

3              Anything further?

4              MR. GIBALDI:  Your Honor, just before we conclude I

5    did want to put on the record the basis for the government's

6    guidelines estimate, because there are additional robberies

7    and attempted robberies that are the basis for that estimate.

8              A completed armed robbery on April 6 that the

9    defendant participated in; an attempted armed robbery on

10   May 3rd in Staten Island; and an attempted armed robbery on

11   May 5th in Suffolk County as well as the Queens robbery that's

12   the subject of Counts Two and Three.

13             MR. LEVITT:  Judge, just for the record, I don't

14   want my silence to be taken as acquiescence, because it is

15   not, but we'll address these issues at a later date.

16             THE COURT:  Yes, sir, understood.

17             All right, then we will -- anything further,

18   Mr. Levitt?

19             MR. LEVITT:  Nothing further, your Honor.  Thank

20   you.

21             THE COURT:  All right, thank you, gentlemen.

22             Mr. Martin, take care of yourself.  I know you've

23   been in a rough spot for a long time, I'm not unaware, but we

24   will reconvene in December.  Unless there's anything else,

25   we'll call it a day.

24

PROCEEDINGS

1          THE COURTROOM DEPUTY:  Judge Dearie, when you leave

2    the bench I'm going to work out a sentence submission briefing

3    schedule with the attorneys.

4          THE COURT:  Sure.

5          MR. GIBALDI:  Thank you, your Honor.

6          THE COURT:  Yes, indeed.

7          (Matter concluded.)

8                      *     *     *     *     *

9    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

10

11   s/ Georgette K. Betts                August 17, 2021

12   GEORGETTE K. BETTS                   DATE

13

14

15

16

17

18

19

20

21

22

23

24

25