# MICHAEL HUESTON
## ATTORNEY AT LAW

16 COURT STREET  
35TH FLOOR  
BROOKLYN, NEW YORK 11241

Tel: (718) 246-2900  
Fax: (718) 246-2903  
Email: mhueston@nyc.rr.com

ADMITTED NY

September 4, 2022

**BY EMAIL**
P.O. Roberta Houlton
United States Probation Department
Eastern District of New York
147 Pierrepont Street
Brooklyn, New York 11201

Re:  *United States v. Storia, et al.*, 19 Cr. 221 (RJD)

Dear P.O. Houlton:

I represent John Martin in this matter. This letter sets forth Mr. Martin's objections, comments, and corrections to the Presentence Report ("PSR"), dated July 6, 2022, and Addenda to the PSR, dated July 20, 2022, and July 22, 2022.

**A.     The Offense Conduct**

¶ 10:  We object to the inclusion of the passage that: "Martin enlisted a robbery crew consisting of among others, Ivan Eli, Corey Mobley and Brandon Daniels." We also object to the passage: "Martin and Mobley recruited Daniels to commit robberies." This mischaracterizes Mr. Martin's role and the scope of his agreement and conduct. Eli knew Mobley through a mutual criminal associate and had never met Martin before the day of their alleged first attempted robbery. *See* Trial Transcript ("Tr.") 206:17-212:1. Further, it was Mobley who persuaded Eli to rejoin the so-called robbery crew, Tr. 214:13-215:12, and who brought Daniels into the crew. Tr. 215:19-24. The passages should be deleted.

¶¶ 11-14, 25: We object to the conduct listed at Pseudo "Counts 1A: The March 29, 2019 Attempted Robbery in New Brunswick, New Jersey", "Count 1B: The April 6, 2019 Robbery in New Brunswick, New Jersey", "Count 1C: The May 3, 2019 Attempted Robbery Staten Island", and Count 1E: The May 5, 2019 Attempted Robbery Setauket, Long Island" in Mr. Martin's PSR. Mr. Martin only pled guilty to the conduct referred to in Pseudo "Count 1D: The May 4, 2019 Robbery Little Neck, Queens" listed at ¶¶ 15-24. The substantive crimes Mr. Martin pled guilty to committing concern only Count 1D. *See* Counts 2 and 3.

We object to your apparent use of U.S.S.G. 1B1.3(a)(l)(B), to hold Mr. Martin accountable for others' actions. The Second Circuit recognizes that in applying Guideline 1B1.3, "the first question for a court . . . is whether the defendant participated in jointly undertaken criminal activity." *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995). In answering that question, the court must determine the scope of the jointly undertaken criminal activity. *United States v. Rizzo,* 349 F.3d 94, 99 (2d Cir. 2003) (noting that under Section 1B1.3 the Government "[i]s required to prove" that a third party's acts are within the scope of defendant's agreement

and reasonably foreseeable to the defendant); U.S.S.G. § 1B1.3, cmt. n.3(B) ("In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must *first* determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)) (emphasis added). *Studley* articulated three factors relevant to determining whether the defendants jointly agreed to undertake criminal activity with others: (1) whether the participants in the activity pooled their profits and resources, or worked independently; (2) whether the defendant assisted in designing and executing the scheme; and (3) what role the defendant agreed to play in the operation. *Studley*, 47 F.3d at 575. "[I]n determining the scope of the criminal activity that the particular defendant agreed to jointly undertake (i.e. the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3, cmt. n.2.

**B.    The Defendants' Participation**

¶¶ 27-30, 32:  As stated, we object to the inclusion of Counts 1A, 1B, 1C, and 1E in Mr. Martin's guideline calculation.

¶ 31: As for Count 1D, we object to the 4 level enhancement for serious bodily injury, as per U.S.S.G. § 2B3.1(b)(3)(B), because Mr. Martin did not want, intend or foresee that a sexual assault would occur. *Cf. United States v. Gahagen*, No. 20-778, 2022 U.S. App. LEXIS 22126, at *1 (2d Cir. Aug. 10, 2022) ("The district court properly applied a two-level enhancement for co-conspirators' restraint of the bank employees and customers with zip ties under U.S. Sentencing Guidelines Manual §§ 1B1.3 and 2B3.1(b)(4)(B) because it was reasonably foreseeable to defendant that his co-conspirators would use physical restraints during the bank robbery."); *United States v. Herring*, 588 F. App'x 201, 203 (3d Cir. 2015) ("To the contrary, '[s]tandard foreseeability analysis does not require [a defendant] to foresee the precise means the perpetrators he aided would use in making a threat of harm credible enough to overcome the victim's willingness to resist.' On a prior occasion, we therefore concluded that a defendant has 'the duty to anticipate or foresee that a bank robbery in broad daylight would require some credible threat of deadly force.'"  Similarly here, the district court correctly noted, 'when you get something that you want to have it look like [a] gun going into a robbery, it is reasonably foreseeable that there will be a threat of death.'") (citing *United States v. Dixon*, 982 F.2d 116, 120 (3d Cir. 1992)); *United States v. Lizano*, 283 F. App'x 754, 756 (11th Cir. 2008) ("The government must prove 'reasonable foreseeability' by a preponderance of the evidence, and 'an act is reasonably foreseeable if it is a necessary or natural consequence of the unlawful agreement.'" (citing *United States v. Cover,* 199 F.3d 1270, 1274, 1275 (11th Cir. 2000) and U.S.S.G. § 1B1.3, cmt. n.2)).

Mr. Martin also objects to a 2 level enhancement that holds he "knew or should have known the victims, included an elderly individual and children" as per U.S.S.G. § 3A1.1(b)(1). Under the Guidelines, "[t]he vulnerable victim enhancement applies where 'the defendant knew or should have known that a victim of the offense was a vulnerable victim.'" *United States v. Kerley*, 544 F.3d 172, 180 (2d Cir. 2008) (quoting U.S.S.G. § 3A1.1(b)(1)). "A 'vulnerable

victim' is defined as one 'who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.'" *Id.* (quoting U.S.S.G. § 3A1.1 cmt. 2). The vulnerability of the victim "must bear some nexus to the criminal conduct" and "the defendant generally must have singled out the vulnerable victims from a larger class of potential victims." *United States v. McCall*, 174 F.3d 47, 50 (2d Cir.1998). Moreover, although "[a]n inquiry into a victim's vulnerability must be individualized and must not be based on broad generalizations about victims based upon their membership in a class," *Kerley*, 544 F.3d at 180 (internal quotation marks omitted), "class membership alone may be sufficient to support the enhancement" when "the criminal shapes the nature of the crime . . . to target a class of victims that are virtually all particularly vulnerable to that crime." *McCall*, 174 F.3d at 51.

C. **Offense Level Computation**

¶¶ 45, 54, 60, 66, 74, 81: (Adjustment for Obstruction of Justice). We object to a 2 level enhancement, as per U.S.S.G § 3C1.1, because of co-defendant Lamonte Johnson *pro se* submission, attaching Mr. Martin's April 6, 2022 *pro se* affidavit. *See* Doc. No. 244. Notably, the affidavit does not contradict Mr. Martin's own admission of guilt and only concerns Mr. Johnson. Mr. Johnson elected to go to trial as is his right, maintaining his innocence. There is insufficient evidence that Mr. Martin willfully obstructed justice with respect to the investigation, prosecution or any sentencing here, or attempted to do. He did not give false trial testimony. *Cf. United States v. Dunnigan*, 507 U.S. 87, 95, 98 (1993); *see also United States v. Shonubi*, 998 F.2d 84, 87-88 (2d Cir. 1993). He did not testify at a hearing or submit a material false affidavit in support of a motion to suppress. *Cf. United States v. Giraldo,* 80 F.3d 667, 680 (2d Cir. 1996); *United States v. Ahmad*, 202 F.3d 588, 593 (2d Cir. 2000); and *United States v. Savoca*, 596 F.3d 154, 159 (2d Cir. 2010).

Though a "false" affidavit submitted in support of a motion to suppress evidence can result in an obstruction enhancement, the Second Circuit has repeatedly expressed sensitivity to the "troubling prospect" that "defendants might either be deterred from pressing arguably meritorious Fourth Amendment claims or being unfairly punished when they do." *United States v. Agudelo*, 414 F.3d 345, 350 (2d Cir. 2005); *see also United States v. Thompson*, 808 F.3d 190, 196 (2d Cir. 2015) (reiterating *Agudelo's* rejection of a *per se* rule "that any time a court credits officer testimony over that of a defendant, the defendant must have given knowingly false testimony). Further, a simple denial of guilt does not warrant an adjustment. See U.S.S.C. 3C1.1, comment. n.2; *United States v. Johns*, 27 F.3d 31, 36 (2d Cir. 1994) ("[A]bsent perjury, a defendant may not suffer an increase in his sentencing for refusing to implicate himself in illegal activity….").

Here, the affidavit does no more than provide Mr. Martin's lay opinion about the charges against Mr. Johnson. Further, the government was not hindered, in any way, by the affidavit. *Cf. United States v. Khimchiachvili*, 372 F.3d 75, 80 (2d Cir. 2004) (to qualify as obstructive, the conduct must impede an investigation, prosecution or sentencing; "[i]t cannot simply be a misrepresentation."). Further, Mr. Martin did not have the specific intent to obstruct justice. *See United States v. Defeo*, 36 F.3d 272, 276 (2d Cir. 1994); *United States v. Reed*, 49 F.3d 895, 900-01 (2d Cir. 1995).

¶¶ 47-82: (Offense Level Computation): Given our objections, Mr. Martin's adjusted offense level is 22, as a result of the guideline for 18 U.S.C. § 1951(a) offenses, being U.S.S.G. §2B3.1(a), which provides a base offense level of 20, and a 2 level increase for victims were physically restrained in the course of the offense as per U.S.S.G. §3A1.3.

¶¶ 82-86: (Multiple Count Adjustment): Given our objections, a multiple count adjustment should not be applied.

¶ 87: (Combined Adjusted offense Level): Given our objections, the combined offense level is 22.

¶ 91: (Total Offense Level): Given our objections, the total offense level, after applying U.S.S.G. § 3E1.1, is 19.

D.  **Defendant's Criminal History**

¶ 97: We object to your misstatements about Mr. Martin being found to be "an enforcer" and being held "accountable for the murder of Lewayne Harrison" regarding his case at 03 Cr. 795 (EDNY). Those assertions were deleted from that PSR. *See* attached at Exhibit 1. The references should be deleted here.

E.  **Sentencing Options.**

¶ 138: (Guideline Provisions: Counts 1 and 2): Based on our objections, the total offense level is 19, and with a criminal history category of III, the range of imprisonment is 37 to 46 months.

Sincerely,

s/Michael Hueston

Enc.

Cc: A.U.S.A. Jonathan Siegal
A.U.S.A. Michael Gibaldi

# EXHIBIT 1

Amendments to Guideline Presentence Report

USA v . John Martin
Docket No: .03-CR-795
Amendments Ordered by: Hon. David G. Trager
U.S. District Judge

Page    12                              Paragraph    35

As contained in 4th and 5th lines of this paragraph, delete "and John"

Page    13                              Paragraph    40

As contained in 4th line of this paragraph, delete from "The cross-reference" to the end of the paragraph (ending with "is applicable.")

Page    13                              Paragraph    41

As contained in the 3rd line of this paragraph, delete "was the 'enforcer' of the Martin Family Crew, and also"

Page    21                              Paragraph    66

The cross-reference to the murder guideline was not applied.